UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

LINDA M. ANDERSON,

               Plaintiff,

   v.

NANCY A. BERRYHILL, Deputy Commissioner
of Social Security for Operations,

               Defendant.

NO.  C17-5412-JPD

ORDER

Plaintiff Linda M. Anderson appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") that denied her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Court AFFIRMS the Commissioner's decision.

## I.       FACTS AND PROCEDURAL HISTORY

Plaintiff is a 48-year-old woman with a high school diploma and additional training as

an educational assistant.  Administrative Record ("AR") at 30-31.  Her past work experience

includes employment as a paraeducator, barista, cashier, customer service clerk, dishwasher,

painter, waitress, and weight operator.  AR at 142.  At the time of the most recent

administrative hearing, Plaintiff was employed as a substitute paraeducator.  AR at 918-22.

1      In September 2007, she filed an application for DIB, alleging an onset date of August

2  30, 2001.  AR at 75-76, 128-32.  Plaintiff asserts that she is disabled due to back and knee pain,

3  depression, and anxiety.  AR at 141.

4      The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 77-

5  79, 82-83.  Plaintiff requested a hearing, which took place on June 7, 2010.  AR at 25-74.  On

6  July 26, 2010, the ALJ issued a decision finding Plaintiff not disabled and denied benefits

7  based on his finding that Plaintiff could perform a specific job existing in significant numbers

8  in the national economy.  AR at 10-18.  Plaintiff's administrative appeal of the ALJ's decision

9  was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of

10  the Commissioner as that term is defined by 42 U.S.C. § 405(g).

11      Plaintiff sought judicial review in the U.S. District Court for the Western District of

12  Washington, and the court granted the parties' stipulation to reverse the ALJ's decision and

13  remand for further administrative proceedings.  AR at 663-70.  A different ALJ held a hearing

14  on September 26, 2013.  AR at 597-637.  On November 27, 2013, the ALJ found Plaintiff not

15  disabled.  AR at 863-80.  Plaintiff filed exceptions, but the Appeals Council found no reason to

16  assume jurisdiction, on November 6, 2014.  AR at 854-58.

17      Plaintiff sought judicial review of this final decision, and the U.S. District Court for the

18  Western District of Washington reversed the Commissioner's decision and remanded for

19  further administrative proceedings.  AR at 985-92.  A third ALJ held a hearing, on November

20  9, 2016 (AR at 914-48), and subsequently found Plaintiff not disabled.  AR at 890-905.

21  Plaintiff again seeks judicial review.  Dkt. 1, 3.

22                 II.     JURISDICTION

23      Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

24  405(g) and 1383(c)(3).

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

IV.     EVALUATING DISABILITY

As the claimant, Ms. Anderson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[1] SGA is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On February 2, 2017, the ALJ found:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2003.

2. The claimant did not engage in SGA during the period from her alleged onset date of August 30, 2001, through the date last insured ("DLI") of December 31, 2003.

3. Through the DLI, the claimant had the following severe impairments: degenerative disc disease and knee osteoarthritis.

4. Through the DLI, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the DLI, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could stand or walk 2 hours in an 8-hour workday. She was permitted to stand up to 15 minutes at a time at her own discretion. She could never climb ladders, ropes or scaffolds. She could occasionally climb ramps and stairs, balance, stoop, kneel and crouch. She could never crawl. She needed to avoid concentrated exposure to hazards and extreme cold. She was permitted to apply ice and heat packs at the workstation.

6. Through the DLI, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1969, and was 34 years old, which is defined as a younger individual age 18-49, on the DLI.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the DLI, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 30, 2001, the alleged onset date, through the DLI.

AR at 893-904.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in assessing certain medical evidence;

2. Whether the ALJ erred in discounting Plaintiff's subjective statements;

3. Whether the ALJ erred in discounting lay evidence; and

4. Whether the ALJ erred in assessing Plaintiff's RFC and in entering step-five findings.

Dkt. 11 at 1.

## VII.    DISCUSSION

A. <u>The ALJ did not err in assessing the medical evidence.</u>

Plaintiff argues that the ALJ erred in assessing various medical opinions, each of which the Court will address in turn.

//

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1          1.      *Legal standards*

2          As a matter of law, more weight is given to a treating physician's opinion than to that

3   of a non-treating physician because a treating physician "is employed to cure and has a greater

4   opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

5   *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

6   however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

7   disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881

8   F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

9   give clear and convincing reasons for doing so if the opinion is not contradicted by other

10  evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725

11  (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts

12  and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

13  (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her

14  conclusions. "He must set forth his own interpretations and explain why they, rather than the

15  doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

16  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at

17  725.

18          The opinions of examining physicians are to be given more weight than non-examining

19  physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the

20  uncontradicted opinions of examining physicians may not be rejected without clear and

21  convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

22  physician only by providing specific and legitimate reasons that are supported by the record.

23  *Bayliss,* 427 F.3d at 1216.

24  //

2.    *William Roes, M.D.*

Dr. Roes began treating Plaintiff after her DLI and opined in January 2008 and April 2010 that she was unable to work due to her back problems and knee problems.  AR at 319, 385.  The ALJ rejected these opinions as failing to describe Plaintiff's capabilities prior to her DLI, and inconsistent with the pre-DLI medical record.  AR at 901.  The ALJ also found that these opinions pertained to an issue reserved to the Commissioner, namely whether Plaintiff was disabled.  *Id.*

Plaintiff states that the lack of retroactivity in the January 2008 and April 2010 opinions is "not a legitimate reason to reject Dr. Roes's opinions regarding [her] limitations *in January 2008 and April 2010.*"  Dkt. 11 at 8 (emphasis in original).  But Plaintiff's limitations in January 2008 and April 2010 are not material to the ALJ's decision; Plaintiff does not dispute that she must show that her disability began on or before her DLI (December 31, 2003) in order to be entitled to benefits.  *See* Dkt. 11 at 1 n.1.  Plaintiff also argues summarily that the January 2008 and April 2010 opinions are in fact consistent with the pre-DLI medical record, but does not explain how any of the ALJ's specific findings to the contrary are erroneous.  Dkt. 11 at 8-9; AR at 901-02.  Plaintiff has not established error in the ALJ's assessment of Dr. Roes's January 2008 and April 2010 opinions, and therefore the ALJ's decision is affirmed with respect to these opinions.

Dr. Roes also wrote an opinion in May 2010 indicating that Plaintiff was unlikely to have been able to work between August 30, 2001, and January 31, 2003, due to a complicated pregnancy and significant back problems related to pregnancy.  AR at 568-69.  The ALJ noted that Dr. Roes was not treating Plaintiff during the time period addressed in this opinion, and that the medical record purportedly reviewed by Dr. Roes to inform his opinion is inconsistent with his conclusions.  AR at 902.  The ALJ further noted that it appeared that Dr. Roes relied

on Plaintiff's subjective statements regarding her functioning in 2001-03 in rendering his opinion. *Id*. The ALJ also found that Dr. Roes's opinion pertained to an issue reserved to the Commissioner. *Id*. For these reasons, the ALJ gave little weight to Dr. Roes's May 2010 opinion. *Id*.

Plaintiff argues that the fact that Dr. Roes was not treating her during the time period covered by the May 2010 opinion is not a reason to discount his opinion, because the medical expert that testified at the 2013 administrative hearing never treated Plaintiff. Dkt. 11 at 9. Plaintiff overlooks a distinction between these opinions, however: the ALJ found that Dr. Roes's May 2010 opinion was inconsistent with the medical record dating to the applicable time period, and, on the other hand, did not find that the medical expert's testimony was inconsistent with that record. *See* AR at 902. As with the earlier opinions, Plaintiff argues that Dr. Roes's May 2010 is in fact consistent with the objective record, but does not address the specific findings mentioned by the ALJ. Dkt. 11 at 9; AR at 902.

Plaintiff also argues that Dr. Roes did not rely on her subjective testimony, but instead based his opinion "on many years of longitudinal knowledge of [her] clinical findings." Dkt. 11 at 9. Dr. Roes did not mention any of these clinical findings, however, in his opinion. *See* AR at 568-69. Instead, he mentioned various physical difficulties and speculated that she may have had problems concentrating, but did not cite any particular support for those opinions. AR at 568. The ALJ was not unreasonable in finding that Dr. Roes's conclusions were based on Plaintiff's self-report, or in discounting the opinion on that basis.

The ALJ also noted that Dr. Roes's May 2010 opinion related to issues reserved to the Commissioner, and did not find the same of the medical expert's testimony. *Id*. As explained here, the ALJ provided multiple specific, legitimate reasons to discount Dr. Roes's May 2010 opinion and therefore the ALJ's assessment of this opinion is affirmed.

3.    *Miscellaneous treatment notes*

Plaintiff notes that the ALJ discusses some of her treatment notes, but suggests that the ALJ erred in failing to acknowledge that those notes establish that Plaintiff had impairments before her DLI, which could support the limitations described by Dr. Roes. Dkt. 11 at 10-13. But the ALJ did find that Plaintiff had impairments before her DLI. *See* AR at 893-94. The ALJ's failure to extract the same interpretation of various treatment notes as offered by Plaintiff does not establish error in the ALJ's decision. Plaintiff has failed to show that the ALJ's interpretation of the treatment record is unreasonable, and thus has failed to show error in the decision. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

4.    *Ollie Raulston, M.D.*

Dr. Raulston testified as a medical expert at the second administrative hearing in September 2013. *See* AR at 601-11. The ALJ addressed Dr. Raulston's testimony as follows:

> The doctor opined [Plaintiff] had the [RFC] to perform light work, stand/walk for two hours, sit for six hours, frequently balance, and occasionally perform all remaining postural activities, except never climbing ladders, ropes, or scaffolds. The doctor found no limitations as to the upper extremities and recommended no exposure to unprotected heights, occasional exposure to moving machinery, and no concentration exposure to extreme cold. The doctor further opined that she could push and pull using the lower extremities at the light exertional level. The doctor noted that she had no consistent neurologic deficits only early degeneration and agreed she should change positions and use heat/ice if these helped. The undersigned gives significant weight to the opinion that she does not meet or equal a listing and to the opinion regarding her ability to lift, carry, stand, walk and other specific limitations found in the above [RFC]. The undersigned gives only partial weight to the opinion about position change and heat/ice because the doctor's testimony about these limitations was somewhat vague. The undersigned formulated the limitations in the [RFC] above by considering his opinion but also the medical evidence and the testimony.

AR at 902.  Plaintiff suggests that the ALJ erred in failing to explain why he gave significant weight to Dr. Raulston's testimony, but cites no authority requiring an ALJ to provide reasons why an opinion is credited and the Court is aware of none.  Dkt. 11 at 13-14.  An ALJ must explain why an opinion that is inconsistent with the RFC assessment is *rejected*, but this requirement does not apply to crediting opinions in formulating an RFC.  *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Plaintiff also argues that the ALJ erred in failing to emphasize certain portions of Dr. Raulston's testimony (Dkt. 11 at 14), but the ALJ need not discuss every statement made by Dr. Raulston, especially when crediting his testimony, as explained above.  Plaintiff has not identified a portion of Dr. Raulston's testimony that was not accounted for, and thus has not shown that the ALJ erred in crediting the testimony.

Plaintiff also argues that the ALJ erred in finding that Dr. Raulston's testimony about her need to change positions and use ice and heat was vague, because this is "not a legitimate reason to reject Dr. Raulston's opinion on these issues."  Dkt. 11 at 14.  Dr. Raulston's testimony on these points was indeed vague: he did not specify how frequently Plaintiff would need to change position or identify which positions she needed to change between, nor did he indicate whether changing positions and alternating heat and ice were part of her treatment or were workplace restrictions.  AR at 606-07.  Moreover, it is not clear that this testimony is inconsistent with the ALJ's RFC assessment, which allows Plaintiff to stand for up to 15 minutes at a time "at her own discretion" and use ice and heat packs at her workstation.  *See* AR at 895.  Because the ALJ's RFC assessment is arguably consistent with Dr. Raulston's testimony, the ALJ was not required to provide reasons to reject it.  *See Turner v. Comm'r of*

1    *Social Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting

2    physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions

3    by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

4           5.    *Migraines and depression*

5          Plaintiff notes that the ALJ failed to include migraine headaches and depression as

6    severe impairments at step two, and argues that even if the step-two error is harmless, it

7    impacted the ALJ's RFC assessment because he did not account for any limitations caused by

8    Plaintiff's migraines and depression.  Dkt. 11 at 14-15.  Plaintiff does not cite any evidence

9    that establishes limitations caused by her migraines or depression, but generally references her

10   subjective testimony.  Dkt. 11 at 14-15.  Because, as explained *infra*, the ALJ properly

11   discounted Plaintiff's subjective testimony, the ALJ did not err in failing to account for

12   limitations established solely by Plaintiff's subjective testimony.  *See Britton v. Colvin*, 787

13   F.3d 1011, 1013-14 (9th Cir. 2015) (holding that where a claimant is not credible, an ALJ need

14   not account for limitations established only by a claimant's self-report in a vocational

15   hypothetical).

16   B.    <u>The ALJ did not err in discounting Plaintiff's subjective testimony.</u>

17         The ALJ discounted Plaintiff's subjective testimony for a number of reasons: (1) the

18   objective medical evidence revealed only minimal physical abnormalities and "essentially

19   unremarkable physical examinations"; (2) Plaintiff made minimal migraine-related complaints

20   before her DLI; (3) Plaintiff's daily activities were inconsistent with the degree of limitations

21   alleged; (4) Plaintiff's pain improved with conservative treatment before her DLI; (5) the

22   record indicated that Plaintiff's back pain had remained constant since 1998-99, and Plaintiff

23   was working at that time; and (6) Plaintiff continued to work at nearly SGA levels even after

24   her alleged onset.  AR at 896-901.  Plaintiff contends that the ALJ's reasons to discount her

testimony are not legally sufficient, and the Court will consider them in turn.

   1.   *Legal standards*

   As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

   When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at

---

   [3] In SSR 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. The Court, however, continues to cite to relevant case law utilizing the term credibility.

722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *Objective medical evidence*

The ALJ specified several ways in which the objective medical evidence was inconsistent with Plaintiff's allegations. For example, the ALJ cited multiple normal physical examinations and test results that revealed mild or minimal changes, which occurred during the adjudicated period. AR at 896-98. The ALJ also cited Plaintiff's reports to medical providers describing limitations caused by her back pain, which were not inconsistent with the ALJ's RFC assessment. AR at 898 (citing AR at 207-16).

Plaintiff argues that the ALJ cannot discount her testimony solely based on the objective medical record, and that a summary of medical evidence does not explain why the ALJ discounted her testimony. Dkt. 11 at 15-16. But the ALJ did not *solely* rely on the objective medical record; he cited a number of other reasons in addition to the medical record. Furthermore, the ALJ's discussion of the medical evidence was not merely a summary: he explained how the normal test results and mild physical abnormalities, paired with reports of mild limitations in activities likely to occur during a workday, were inconsistent with Plaintiff's allegations of disabling symptoms. The ALJ did not err in considering the degree to which the medical record corroborated Plaintiff's allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling

effects.").

### 3. *Migraine headaches*

The ALJ noted that although Plaintiff rarely complained to providers or sought treatment regarding migraines. AR at 899. The ALJ also cited a treatment provider's note that medication controlled Plaintiff's headaches. *Id.* (citing AR at 353). This evidence is inconsistent with Plaintiff's hearing testimony about frequent headaches that impaired her ability to work. *See, e.g.*, AR at 929.

Plaintiff presents no direct challenge to this line of the ALJ's reasoning, and this reason supports the ALJ's conclusion regarding Plaintiff's testimony.

### 4. *Daily activities*

The ALJ summarized various activities and found them to be inconsistent "with the degree of symptoms reported." AR at 899. An ALJ may rely on a claimant's daily activities to discount his or her testimony if the activities contradict his or her testimony or demonstrate the existence of transferable work skills. *See Orn*, 495 F.3d at 639 (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). Plaintiff argues that the ALJ failed to explain how the cited activities contradict her testimony, and failed to identify any transferable work skills. Dkt. 11 at 16-17.

It is true that the ALJ did not explicitly note how the cited activities contradicted Plaintiff's testimony. Furthermore, it appears that the ALJ cited some activities that Plaintiff participated outside of the adjudicated period, and they do not necessarily bear on her activity level during the adjudicated period.

Even if the ALJ's reasoning is erroneous with respect to Plaintiff's activities, the ALJ provided many other independent reasons, described herein, to discount Plaintiff's testimony,

which renders this error harmless.  *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

 5. *Improvement with conservative treatment*

The ALJ found that during the adjudicated period, Plaintiff's pain was controlled by conservative treatment such as physical therapy, injections, and medications.  AR at 899-900.  This is a clear and convincing reason to discount Plaintiff's description of disabling limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset.  Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.").

Plaintiff notes that her pain eventually resulted in three back surgeries.  Dkt. 11 at 17.  But these surgeries did not occur during the adjudicated period, and they do not undermine the evidence cited by the ALJ showing that during the relevant period, Plaintiff's pain symptoms improved with conservative treatment.

 6. *Work history*

The ALJ cited Plaintiff's work history as a reason to discount her testimony, because she was able to work full-time with the same degree of impairment that she now claims was disabling, from 1998-2001.  AR at 900-01.  The ALJ also noted that at the time of the most recent administrative hearing (more than 12 years after her DLI), she was working part-time at almost SGA levels and had been for a few years, even though she also described her pain at the most recent administrative as much worse than it had been before.  *Id.*; AR at 926.  Plaintiff's ability to work with the same or worse symptoms she now claims are disabling is a clear and convincing reason to discount her subjective allegations.  *See Gregory v. Bowen*, 844 F.2d 664,

666-67 (9th Cir. 1988) ("Furthermore, substantial evidence indicated that the condition of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time."); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.").

Plaintiff suggests that her ability to work before or after the adjudicated time period is not relevant to her ability to work during the time period, and that the ALJ's reasoning is therefore misleading. Dkt. 11 at 17-18. But the ALJ noted that Plaintiff reported in April 2003 that her back and leg symptoms had started about 4-5 years earlier and had remained constant. AR at 900 (citing AR at 207). Thus, Plaintiff's ability to work full-time from 1998-2001 is relevant, even though it predates the adjudicated period. Her ability to currently work part-time also bears on the severity of her symptoms during the adjudicated period, in light of her testimony that her condition has worsened since then.

Plaintiff's brief goes on to summarize her own testimony at length, without making any connected legal argument. Dkt. 11 at 18-23. Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's subjective testimony, as described herein, the Court affirms his assessment of her statements.

C.    The ALJ did not harmfully err in assessing the lay statements.

Plaintiff's husband, Daniel Anderson, completed form statements in 2007 and 2010 describing Plaintiff's symptoms and limitations. AR at 148-55, 556-60. He also testified at the third administrative hearing. AR at 944-48.

Plaintiff's neighbor, Victoria Krause, completed a form statement in 2010 regarding Plaintiff's symptoms and limitations. AR at 562-66.

The ALJ discounted Mr. Anderson's and Ms. Krause's written statements, finding them to be unsupported by the medical evidence to some degree. AR at 903. The ALJ also noted that the RFC assessment accounts for some of the limitations described by these laywitnesses. *Id*. The ALJ did not address Mr. Anderson's hearing testimony. Plaintiff argues that the ALJ erred in assessing the lay evidence.

1. *Legal standards*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

2. *Written lay statements*

The ALJ summarized the limitations described by Mr. Anderson and Ms. Krause and found that those limitations were somewhat accommodated in the RFC assessment, to the extent they were corroborated by medical evidence. AR at 903. This is a germane reason to discount lay statements. *See Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.").

//

1          3.          *Hearing testimony*

2          The ALJ did not address Mr. Anderson's testimony at the third administrative hearing.

3    At the hearing, the ALJ noted that he had read Mr. Anderson's earlier written statements and did

4    not need to go into much detail at that time.  AR at 944.  Mr. Anderson's hearing testimony

5    described many of the same symptoms and limitations he addressed in his written statements, as

6    well as in Plaintiff's statements, and therefore the ALJ's germane reasoning to discount Mr.

7    Anderson's written statements and Plaintiff's statements applies with equal force to Mr.

8    Anderson's hearing testimony.  Indeed, Plaintiff's briefing does not identify any prejudice

9    flowing from the ALJ's failure to discuss Mr. Anderson's hearing testimony.  Dkt. 11 at 23; Dkt.

10   20 at 13.  The ALJ's error in failing to address Mr. Anderson's hearing testimony is harmless.

11   *See Molina*, 674 F.3d at 1122.

12   D.          The ALJ did not err in assessing Plaintiff's RFC or at step five.

13          Plaintiff argues that the ALJ erred in failing to account for all of her limitations in the

14   RFC assessment, and that as a result the ALJ's step-five findings are based on an incomplete

15   vocational hypothetical.

16          With respect to Plaintiff's RFC assessment, she argues that the ALJ erred in failing to

17   account for limitations mentioned in evidence that the ALJ discounted.  Dkt. 11 at 25.  The

18   ALJ was not required to account for limitations that the ALJ properly rejected, and therefore

19   Plaintiff has not shown error in the ALJ's RFC assessment in this respect.  *See Bayliss*, 427

20   F.3d at 1217-18.

21          Plaintiff also argues that the ALJ's RFC assessment violates the law of the case

22   doctrine, because parts of the ALJ's RFC assessment were identical to portion of the previous

23   RFC assessment that was found erroneous by a prior court.  Dkt. 11 at 25.

24

1  In the prior ALJ decision, the ALJ gave significant weight to Dr. Raulston's testimony

2  regarding Plaintiff's limitations, and stated that the RFC assessment accounted for his

3  testimony regarding Plaintiff's need to change positions and apply ice and heat.  AR at 875.

4  The prior court decision found that Dr. Raulston's testimony regarding the extent of those

5  limitations was unclear, as was the extent to which the ALJ's RFC assessment accounted for

6  those limitations, and the court remanded for clarification.  AR at 989.

7  In the current decision, the ALJ's RFC assessment is more specific: the ALJ stated that

8  Plaintiff must be permitted to stand for up to 15 minutes at a time, at her own discretion.  AR at

9  895.  No such restriction was included in the prior RFC assessment.  AR at 867-68.  The

10  current ALJ decision also states that Plaintiff would be able to apply ice and heat at her

11  workstation.  AR at 895.  No such restriction was included in the prior RFC assessment.  AR at

12  867-68.  Furthermore, the ALJ discounted the portion of Dr. Raulston's testimony wherein he

13  describes the restrictions regarding changing position and applying ice and heat, and this

14  assessment was legally sufficient, as discussed *supra*.  In light of the ALJ's more restrictive

15  RFC assessment in the current decision, as well as his clarification regarding the weight

16  assigned to Dr. Raulston's opinion — both of which distinguish this decision from the prior

17  decision — the current decision does not violate the law of the case doctrine.  *See Stacy v.*

18  *Colvin*, 825 F.3d 563 (9th Cir. 2016) (discussing the law of the case doctrine in the Social

19  Security context).  To the extent that the ALJ's RFC assessment does not account for all

20  potential limitations that could have been intended in Dr. Raulston's vague testimony

21  regarding Plaintiff's need to change positions and/or apply heat and ice, the ALJ properly

22  discounted that testimony and therefore did not err in failing to account for speculative

23  limitations.

24

1    Because Plaintiff has not shown that the ALJ erred in assessing her RFC, she has not

2    shown that the vocational hypothetical, which was consistent with the RFC assessment, is

3    incomplete.  Accordingly, she has not shown step-five error.

4                              VIII.    CONCLUSION

5         The role of this Court is limited.  As noted above, the ALJ is responsible for

6    determining credibility, resolving conflicts in medical testimony, and resolving any other

7    ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to

8    more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

9    *Thomas*, 278 F.3d at 954.  While it may be possible to evaluate the evidence as Plaintiff

10   suggests, it is not possible to conclude that Plaintiff's interpretation is the only rational

11   interpretation.

12        For the reasons explained above, the Court AFFIRMS the Commissioner's decision.

13        DATED this 28th day of March, 2018.

14

15                                    _____

16                                    JAMES P. DONOHUE
                                      United States Magistrate Judge

17

18

19

20

21

22

23

24

ORDER - 21